96 F.3d 1451
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Dwayne Earl BARTHOLOMEW, Petitioner-Appellant,
v.
Tana WOOD, Superintendent of the Washington State
Penitentiary, Respondent-Appellee.
 No. 93-35549.
 United States Court of Appeals, Ninth Circuit.
 Aug. 29, 1996.
 
 Before: WRIGHT, PREGERSON,* and REINHARDT, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Dwayne Bartholomew, a Washington state prisoner, was convicted of aggravated first-degree murder. Although he was originally sentenced to death, the Washington Supreme Court reversed his sentence, and he received a sentence of life without possibility of parole in a sentencing retrial. After exhausting his state remedies, he filed a habeas corpus petition, which the district court denied. On appeal, we reversed, finding that the state violated due process by failing to disclose that one of its two principal witnesses on the issue of petitioner's premeditation had failed a polygraph test. 34 F.3d 870 (9th Cir.1994).[1] The Supreme Court reversed. 116 S.Ct. 7 (1995).
 
 
 3
 We now consider the other arguments petitioner made in his habeas petition. Petitioner contends that 1) that the prosecution knowingly presented perjured testimony in violation of Napue v. Illinois, 360 U.S. 264 (1959); and 2) that he was prejudiced by ineffective assistance of counsel at trial. After considering petitioner's arguments, we find no prejudicial error. Accordingly, we affirm the district court order denying the petition.
 
 I.
 
 4
 Petitioner contends that the government knowingly presented perjured testimony when it called Rodney Bartholomew to testify. He contends that the prosecution was aware that Rodney was testifying falsely because of his previous polygraph results. The petitioner has the burden of showing that the prosecution knowingly put on perjured testimony. United States v. Lochmondy, 890 F.2d 817 (6th Cir.1989); see also United States v. Necoechea, 986 F.2d 1273, 1281 (9th Cir.1993) (noting that defendant had not shown that the prosecutor knew the statements were perjurious). We can find no case that discusses whether a polygraph result indicating a witness has answered a question falsely is sufficient to put the government on notice that a witness is lying if the witness testifies the same way at trial and there is no other support for the witness' testimony. We need not consider that question here, because Rodney Bartholomew's testimony at trial, including his testimony about whether the killing was premeditated, was corroborated by another witness, Tracy Dormandy. Under these circumstances, we do not find that petitioner has met his burden of showing that the prosecution knowingly presented false testimony. Cf. United States v. Sherlock, 962 F.2d 1349, 1364 (9th Cir.1989) (where prosecutor presents witnesses with contradictory testimony, and defendant does not allege that prosecutor knew which witness was lying, defendant has not shown prosecutor knowingly presented false testimony).
 
 II.
 
 5
 Bartholomew argues that his trial counsel was ineffective because he failed: (1) to discover the polygraph test and results; (2) to interview Rodney or Tracy before the trial; and (3) to object to the introduction of the gun into evidence or obtain an independent test of the gun.
 
 
 6
 In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court set forth a two-part standard for addressing claims of ineffective assistance of counsel. In order to establish a violation of his Sixth Amendment rights, a defendant must first demonstrate "that counsel's performance was deficient." Id. at 687. That is, the defendant must show that the attorney's performance fell below the standard of "reasonableness under prevailing professional norms." Id. at 688. In addition, "the defendant must show that the deficient performance prejudiced the defense." Id. at 687. The Strickland prejudice standard was drawn from the standard for materiality of Brady violations: "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. The district court concluded that petitioner's counsel's performance was deficient but that he had not demonstrated prejudice. We agree.
 
 
 7
 Bartholomew argues that his trial attorney was ineffective because he failed to discover the polygraph examinations performed on Rodney and Tracy. The district court heard persuasive evidence that, despite the prosecution's purported "open-file" policy, it was unreasonable and unprofessional conduct for trial counsel to fail to make any specific discovery requests. (Habeas Tr. 66). However, because the Supreme Court determined that the polygraph results were not "material" for Brady purposes, the failure to discover these results caused no "prejudice" under Strickland. The Court stated that the tests were inadmissible under Washington law and that it was not reasonably likely that their disclosure would have led to other evidence that would have affected the result.
 
 
 8
 A similar analysis obtains with regard to Bartholomew's second ineffective assistance theory--that his trial lawyer was ineffective because he failed to interview Rodney or Tracy before trial. The Supreme Court determined that respondent's counsel's inability to undermine Rodney's story when counsel questioned him at a post-trial hearing about the polygraph results shows that disclosure of the results would have yielded no material evidence. That determination forecloses our finding prejudice from trial counsel's failure to interview Rodney before trial. Nor has petitioner shown how the failure to interview Tracy before trial was prejudicial.
 
 
 9
 Bartholomew's final ineffective assistance theory refers to counsel's failure to investigate the murder weapon and keep it out of evidence at trial. Bartholomew's claim relies on the state's failure to prove at trial that it had maintained an unbroken chain of custody over the gun. Bartholomew claims that his trial attorney should have raised a chain-of-custody objection to the admission of the gun. However, such an objection would likely have been unavailing. See State v. Russell, 424 P.2d 639 (Wash.1967).
 
 
 10
 Bartholomew also claims that his trial attorney should have had an expert test the weapon to determine whether it had been altered while in police custody. He seems to suggest that the police may have changed the gun from a double-action weapon, which can be fired with a single pull of the trigger, to a single-action weapon, in which the shooter must both cock the hammer and pull the trigger. However, he provides no evidence for the suggestion that the gun was altered in this way or any other way. Moreover, at least two parts of the trial testimony indicate that the gun was always a single-action revolver: Hebert's testimony indicated that the model of pistol used in the robbery--a Frontier Scout--was a single-action model (Trial Tr. 438); in addition, Dwayne Bartholomew himself stated that he cocked his pistol in the laundromat--an action which would be unnecessary if he used a double-action weapon (Trial Tr. 472). Thus, Bartholomew has failed to demonstrate prejudice arising from his trial attorney's actions with respect to the murder weapon.
 
 Conclusion
 
 11
 Although the prosecution should not have denied that there were any polygraph results, for the reasons stated above we find no basis to grant the petition.
 
 
 12
 AFFIRMED.
 
 
 
 *
 Judge Thomas Tang was originally a member of this panel. Judge Pregerson was drawn to replace Judge Tang. Judge Pregerson has, inter alia, read the briefs, reviewed the record, and listened to the tape of oral argument
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided in Ninth Circuit Rule 36-3
 
 
 [1]
 We held that the prosecution violated Brady v. Maryland, 373 U.S. 83 (1963), by withholding the polygraph examination results of petitioner's brother, Rodney Bartholomew, a principal prosecution witness