

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 36381-3-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ZACHARY P. BERGSTROM, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

KORSMO, J. — Zachary Bergstrom appeals from multiple convictions, primarily

challenging the sufficiency of the evidence and some conditions of community custody.

His attorney seeks to withdraw from representation due to criticism in Mr. Bergstrom's

statement of additional grounds (SAG). We affirm the convictions, deny the motion to

withdraw, and remand to strike one condition of community custody.

FACTS

A Spokane County sheriff's deputy walked up to a car parked in the closed

parking lot of a county park. It was 12:30 a.m. Mr. Bergstrom was the sole occupant of

the backseat of the car; two others sat in the front seat.

The deputy observed a semiautomatic handgun on the floor between Bergstrom's feet. When Bergstrom declined to keep his hands in view, the deputy removed him from the car and detained him in handcuffs. The deputy then obtained consent from the driver to search the vehicle and retrieve the gun.

After running the gun's serial number, law enforcement obtained a warrant to search the vehicle. The ensuing search revealed a holster for the firearm located under a blanket directly next to where Mr. Bergstrom had sat. Deputies also located a green ledger with Mr. Bergstrom's name in it with language related to drug dealing. A pouch by Mr. Bergstrom's feet contained a white crystalline substance; another container held a black tar-like substance. Deputies also found a scale, Baggies, and cash near Mr. Bergstrom. Testing positively identified methamphetamine and heroin.

The prosecutor ultimately charged Bergstrom with second degree unlawful possession of a firearm, possession of a stolen firearm, possession of methamphetamine with intent to deliver while armed with a firearm, and possession of heroin. The case proceeded to jury trial. The stolen firearm count was dismissed at the conclusion of the State's case. The jury convicted on the remaining three counts and found that Mr. Bergstrom was armed with a firearm while possessing the methamphetamine.

2

At the initial sentencing hearing, the trial court identified a base range of 60 to 120 months on the possession with intent count, plus an additional 36 months for the weapons enhancement. The court imposed a midrange term of 126 months on that count and lesser concurrent terms on the unlawful firearm possession and heroin counts. After it was called to the court's attention that the maximum sentence for a class B felony was 120 months, the court resentenced the defendant. Interested in imposing supervision on the defendant, the court inquired of a basis for an exceptional sentence in order to do so. Defense counsel could not think of a basis for an exceptional sentence, so asked to brief the issue; the hearing was continued.

Counsel did not file a brief and indicated at the hearing that he found no basis for an exceptional sentence. The court then imposed a sentence of 120 months, consisting of 84 months and the 36-month enhancement; the court deemed this an "exceptional sentence."

Mr. Bergstrom timely appealed to this court. His appointed counsel filed a brief of appellant and, on April 2, 2020, a reply brief. Mr. Bergstrom filed his SAG on January 14, 2020. The issue raised in that document was a contention that appellate counsel provided ineffective assistance by failing to challenge the foundation for each piece of evidence admitted against him, a purported defect that Mr. Bergstrom allegedly remedied by use of his SAG. On June 22, this court notified the parties that the case would be heard at oral argument on September 10. However, during subsequent review, the panel

decided not to hear argument. The decision was communicated to the parties on August 25. Meanwhile, on August 24, counsel for appellant read the SAG and discovered that it challenged the effectiveness of appellate counsel.

Appellate counsel filed a request to withdraw. The clerk of court denied the request on September 1. Counsel then filed a motion to modify and, if necessary, to stay proceedings pending a motion for discretionary review to the Washington Supreme Court. The motions were passed to the panel considering the appeal.

## ANALYSIS

Before addressing the merits of the arguments presented by the briefing, we first consider counsel's motion to withdraw in conjunction with the SAG. We deny the motion to withdraw and, briefly, reject the SAG argument.

### *Motion to Withdraw and SAG*

Washington permits an appellant in a criminal case to file a SAG addressing issues that "the defendant believes have not been adequately addressed by the brief filed by the defendant's counsel." RAP 10.10(a). In the event that issues of possible merit have been identified, the court may require both counsel to address the SAG issues. RAP 10.10(f). Only documents in the record may be considered when assessing a SAG argument. RAP 10.10(c). Thus, if the record does not contain the necessary support for an argument, the

reviewing court will decline to consider it due to lack of an evidentiary basis. *Id*.; *State v. Bluehorse*, 159 Wn. App. 410, 435, 248 P.3d 537 (2011).[1]

Here, Mr. Bergstrom argues in the SAG that his appellate counsel wrongly focused argument on the sufficiency of the evidence instead of its admissibility. He argues that appellate counsel should have challenged the *foundation* for the physical evidence. He also believes that by raising this contention in his SAG, he has refocused the issue to its proper position on appeal. Appointed counsel believes the SAG goes beyond mere disagreement with counsel's approach to the case and is the equivalent[2] to a motion to discharge existing counsel and appoint new counsel. These arguments fail.

Mr. Bergstrom did not file a motion asking for a new attorney, nor did he seek to discharge counsel and represent himself. *State v. Rafay*, 167 Wn.2d 644, 222 P.3d 86 (2009). He also had plenty of time between the filing of the SAG and counsel's review of the document to bring his own request for a new attorney if he had desired to do so.[3]

---

[1] The remedy, if an appellant believes he has a factual basis for an argument not supported by the existing record, is to file a personal restraint petition with which he could file an affidavit describing the evidence available to prove the claim. *E.g.*, *State v. McFarland*, 127 Wn.2d 322, 338 n.5, 899 P.2d 1251 (1995); *State v. Norman*, 61 Wn. App. 16, 27-28, 808 P.2d 1159 (1991).

[2] As a non-dispositive motion, a motion to withdraw would not have been appropriately filed in a brief or a SAG. RAP 10.4(d).

[3] Since the SAG is irrelevant to counsel's handling of the case, unless directed to brief a SAG issue by this court, we are not criticizing the seven month delay between the filing of the SAG and counsel's review. We simply note the lengthy time period allowed Mr. Bergstrom ample opportunity to bring his own motion.

All properly filed SAG issues implicitly criticize counsel's choice of arguments, but that fact does not create a conflict of interest.  Similarly, an appellate court's decision to request briefing on a SAG issue could itself be interpreted as a criticism of counsel's choice of arguments; yet, appellate courts do not routinely appoint new attorneys just because a SAG raises an issue of potential merit.

In this instance the SAG did not rise to that level.  If the issue had presented a question justifying briefing, this court then would necessarily have had to consider whether current counsel was the appropriate party to brief the issue.[4]  But, criticism by an appellant of counsel's briefing does not itself create a conflict of interest requiring the appointment of new counsel.

This case demonstrates that nicely.  The SAG issues are without merit.  A party seeking to challenge an evidentiary ruling on appeal must necessarily have first raised the same issue to the trial court.  *State v. Guloy*, 104 Wn.2d 412, 421, 705 P.2d 1182 (1985). Evidence allegedly admitted in violation of the Rules of Evidence does not present a manifest constitutional error that this court can consider for the first time on appeal.  RAP 2.5(a); *Dowling v. United States*, 493 U.S. 342, 352, 110 S. Ct. 668, 107 L. Ed. 2d 708 (1990).  Appellant did not object to the evidence in the trial court on these same grounds and cannot bring the SAG challenges now.  *Id.*

---

[4] A motion to withdraw would likewise have been appropriately timed.

6

Thus, the SAG arguments fail in multiple manners. First, because he did not present the foundation challenges in the trial court, the arguments are waived.[5] *Guloy*, 104 Wn.2d at 421. Second, because the arguments were waived at the trial level, appellate counsel could not do anything to revive them on appeal. RAP 2.5(a). Likewise, the effort of the SAG to present the issue is equally ineffectual. Appellate counsel was not ineffective for failing to raise an unpreserved and meritless argument. The motion to withdraw also is without merit.

Accordingly, we decline to modify the clerk's ruling and decline to stay consideration of this case. The SAG claims are without merit.

### Issues Presented by the Brief

The appeal raises four challenges to the sufficiency of the evidence, alleges ineffective assistance of counsel and error by the trial judge at sentencing, and challenges several components of the judgment. We jointly consider the sufficiency challenges before turning to the challenges to the sentencing proceeding. Finally, we address the challenges to the sentencing components.

---

[5] The arguments also demonstrate lack of understanding of basic evidence principles. Evidence is admissible if it is properly identified and shown to be in the same condition as when the crime was committed. *State v. Campbell*, 103 Wn.2d 1, 21, 691 P.2d 929 (1984). Defects in the chain of custody only go to the weight to be given the evidence; they do not bar admission. *Id*. Chain of custody is but one method of authenticating evidence. *E.g.*, *State v. Russell*, 70 Wn.2d 552, 553, 424 P.2d 639 (1967).

*Sufficiency of the Evidence*

The brief challenges the sufficiency of the proof that the firearm was genuine, whether Bergstrom "possessed" the weapon or the drugs, and whether he was "armed" with the weapon. We treat those four claims as three, and first consider the possession argument common to all three convictions.

Appellate review of these arguments is in accord with well-understood standards. Evidence is sufficient to support a verdict if the jury has a factual basis for finding each element of the offense proved beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *State v. Green*, 94 Wn.2d 216, 221-222, 616 P.2d 628 (1980). The evidence is viewed in the light most favorable to the prosecution. *Green*, 94 Wn.2d at 221. Appellate courts defer to the trier-of-fact on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence. *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990). Circumstantial evidence is as reliable as direct evidence. *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980).

*Possession.* Counsel argues that Mr. Bergstrom did not possess the controlled substances and did not knowingly possess the firearm at his feet. Possession may be actual or constructive. "Actual possession means that the goods are in the personal custody of the person charged with possession; whereas, constructive possession means that the goods are not in actual, physical possession, but that the person charged with

8

possession has dominion and control over the goods." *State v. Callahan*, 77 Wn.2d 27, 28, 459 P.2d 400 (1969). Dominion and control are determined by the totality of the circumstances; no single factor is dispositive. *State v. Cote*, 123 Wn. App. 546, 549, 96 P.3d 410 (2004). One aspect of dominion and control is "the ability to reduce an object to actual possession." *State v. Turner*, 103 Wn. App. 515, 521, 13 P.3d 234 (2000). Additionally, constructive possession of contraband exists if the defendant had dominion and control over the contraband or over the premises where it was found. *Id.*

Little needs to be said about the possession argument. The firearm and the controlled substances were at Mr. Bergstrom's feet, and he was the sole occupant of the back seat of the car. Other items identified as belonging to Bergstrom were beside him on the seat. He could easily have asserted control over the drugs and the gun. The evidence permitted the jury to conclude that he possessed those items and knowingly possessed the weapon. *See State v. Echeverria*, 85 Wn. App. 777, 783, 934 P.2d 1214 (1997) (sufficient evidence of knowing possession existed where gun was in plain sight at the defendant's feet and within his reach).

*Genuine Firearm.* Pointing out that the weapon was not admitted into evidence, counsel argues that there was insufficient evidence that the gun seen in the vehicle was genuine because it was not shown to be the one tested by law enforcement. The evidence circumstantially connected the weapon found in the car to that handled and tested by law enforcement.

This court has concluded that in order to constitute a "firearm" as defined by RCW 9.41.010

> a device must be capable of being fired, either instantly or with reasonable effort and within a reasonable time. Evidence that a device appears to be a real gun and is being wielded in committing a crime is sufficient circumstantial evidence that it is a firearm.

*State v. Tasker*, 193 Wn. App. 575, 594, 373 P.3d 310 (2016). In *Tasker*, a robbery victim who had never seen a gun before, identified the object used by a robber as a gun, she heard a "click" of the weapon when it was behind her head, and testified that the defendant pointed it at her while demanding her purse. *Id*. at 595. This court concluded that the evidence was sufficient to prove the existence of a firearm.

Significantly more evidence existed here. The arresting officer testified that a gun was discovered between Mr. Bergstrom's feet; a photograph of that item was admitted as exhibit P-1. The officer then used the serial number on the weapon to contact the owner. The owner testified at trial that the gun in the courtroom was his missing weapon.[6] The detective on the case testified to retrieving the weapon from evidence on three occasions: (1) to show defense counsel, (2) to test, and (3) to bring to trial. He also told the jury about firing the weapon six times to confirm its operability and obtain bullet samples for

---

[6] The weapon was used for illustrative purposes and was never offered into evidence.

further testing. During cross-examination, defense counsel repeatedly asked the laboratory technician about the gun and bullets "related to this case."[7]

Inexplicably, the prosecutor failed to have the arresting officer identify the weapon in the courtroom as the weapon seized from between Bergstrom's feet. Nonetheless, the circumstantial evidence permitted the jury to reach that conclusion. The arresting officer used the seized weapon to find the owner. The owner identified the gun as his; the arresting officer, owner, detective, and technician all confirmed that it was a genuine gun. The jury could see the gun on display during testimony and had a picture of the weapon seized from Bergstrom. Although the connection between the gun at the defendant's feet and the one in the courtroom could have been made clearer, it was sufficient.

The noted evidence allowed the jury to conclude that a genuine firearm was recovered from between Mr. Bergstrom's feet.

*Armed.* Lastly, Mr. Bergstrom challenges the sufficiency of the evidence to support the jury's finding that he was "armed" with the firearm while possessing the methamphetamine for delivery. The evidence did allow the jury to properly draw that conclusion.

A person is "armed" with a firearm in the commission of a crime when the firearm is (1) "easily accessible and readily available for use, either for offensive or defensive

---

[7] The defense to the charge centered on whether Mr. Bergstrom possessed the weapon, rather than whether a genuine gun was present.

purposes," and there is (2) "some nexus between the defendant, the weapon, and the crime." *State v. Eckenrode*, 159 Wn.2d 488, 493, 150 P.3d 1116 (2007) (internal quotations and citations omitted). Stated simply, the weapon must be accessible and connected to the crime.

Those elements are easily satisfied here. The gun was between Mr. Bergstrom's feet. It was accessible. It also was connected to the drug operation. The gun was on the floor next to the container with the drugs. On the seat beside Mr. Bergstrom was both his drug ledger and a holster for the gun, with scales nearby. The weapon and the controlled substances were together in one location and the accompanying accessories—the holster and the ledger—were together in another nearby location. The evidence permitted the jury to conclude that the weapon and the methamphetamine were connected. The nexus existed.

The evidence supported each of the challenged elements. It was sufficient to authorize each verdict.

*Sentencing Hearing*

Appellant next contends that counsel was ineffective at sentencing and the judge erred by not realizing his authority to impose an exceptional sentence. The first claim is without merit and the second is belied by the record.

The latter point needs little discussion. The court initially inquired about the possibility of an exceptional sentence, was advised by both parties it was possible, and

granted counsel's request for a continuance to explore the potential bases for an exceptional sentence. When imposing sentence, the court even indicated that it was imposing an exceptional sentence of 84 months plus a 36-month weapons enhancement.[8] The court's ability to impose an exceptional sentence was never in doubt. The court simply found no basis for doing so.

Here, Mr. Bergstrom faults the sentencing attorney for not arguing for an exceptional sentence, alleging that this constituted ineffective assistance. *See Strickland v. Washington*, 466 U.S. 668, 688-692, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984) (when an attorney error prejudices the client, counsel has violated the Sixth Amendment right to effective assistance of an attorney). This claim fails because there was no valid basis for imposing an exceptional sentence.

Appellant cites to his drug dependency as a potential basis for an exceptional sentence. However, that argument long has been rejected by the Sentencing Reform Act

---

[8] This notation did constitute error, but neither party raises it. The standard range for an offense consists of the base range identified by the legislature, plus any enhancement. *See In re Gutierrez*, 146 Wn. App. 151, 188 P.3d 546 (2008) (adding enhancements to both ends of base range to determine standard range). Whenever the standard range exceeds the statutory maximum sentence permitted for the offense, the statutory maximum becomes the standard range. RCW 9.94A.599. In the event that the maximum sentence is exceeded due to an enhancement, the court is not permitted to reduce the enhancement. *Id*. Thus, the standard range sentence here should simply have said "120 months" and carried a notation that the sentence included a 36-month enhancement. There was no need to declare an exceptional sentence and no need to parcel the standard sentence into two pieces.

of 1981 (SRA), ch. 9.94A RCW and our courts.  Basing a sentence on the characteristics

of the offender violates the anti-discrimination provision of the SRA.  RCW 9.94A.340

(SRA applies equally to all offenders "without discrimination as to any element that does

not relate to the crime or the previous record of the defendant.")  Accordingly, a

defendant's need for rehabilitative services does not justify an exceptional sentence.  *E.g.*,

*State v. Gaines*, 122 Wn.2d 502, 511-512, 859 P.2d 36 (1993) (drug addiction); *State v.*

*Hutsell*, 120 Wn.2d 913, 845 P.2d 1325 (1993) (intoxication and cocaine addiction); *State*

*v. Allert*, 117 Wn.2d 156, 815 P.2d 752 (1991) (alcoholism and mental illness).

Counsel did not err when he recognized the extensive authorities and declined to

argue for an unsupported exceptional sentence.  Mr. Bergstrom has not demonstrated that

his counsel performed deficiently.

*Sentencing Components*

Mr. Bergstrom challenges three community custody conditions, the felony

firearms registration requirement, and PADT[9] zone exclusion order.  We accept the

State's concession that the PADT order is unsupported by the evidence and direct the trial

court to strike that provision.  We first address the community custody conditions and

conclude with the registration requirement.

*Community Custody Conditions.*  Mr. Bergstrom challenges on varying

constitutional grounds, community custody conditions (1) prohibiting him from

14

contacting DOC-identified drug offenders, (2) limiting his travel within geographic boundaries, and (3) requiring he obey all conditions imposed by the Department of Corrections. All contentions are without merit.

We typically review community custody conditions for abuse of discretion. *State v. Padilla*, 190 Wn.2d 672, 677, 416 P.3d 712 (2018). Discretion is abused when it is exercised on untenable grounds or for untenable reasons. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971). Mr. Bergstrom does not challenge these standards, but, instead, briefly contends each challenged condition is unconstitutional. Our case law indicates otherwise.

This court has previously rejected a challenge to the identified drug offender condition. *State v. Hearn*, 131 Wn. App. 601, 607-609, 128 P.3d 139 (2006). Freedom of association may be restricted in order to facilitate rehabilitation. *Id*.

The Washington Supreme Court very recently confirmed that offenders on supervision have no right to travel and may be subjected to restriction on movement during the period of supervision. *In re Pers. Restraint of Winton*, No. 97452-7 (Wash. September 17, 2020) https://www.courts.wa.gov/opinions/pdf/974527.pdf. The second challenged condition was properly imposed.

---

[9] Protected against drug trafficking area. RCW 10.66.010(5).

Finally, Mr. Bergstrom argues that the requirement he comply with all DOC-imposed conditions is vague. The condition is authorized by statute. RCW 9.94A.704. Bergstrom does not explain how some unidentified condition is vague before it is even imposed. This claim simply is not ripe for review. *State v. Peters*, 10 Wn. App. 2d 574, 583, 455 P.3d 141 (2019).

The challenges to the three community custody conditions are without merit.

*Felony Firearm Registration.* Lastly, we turn to the contention that the trial court wrongly required him to register as a felony firearm offender. RCW 9.41.330. Mr. Bergstrom objected to the registration requirement, but did not explain why it was improper. On appeal, he contends that the court wrongly focused solely on one statutory factor and did not include the others. Since the registration order is supported by the record, we affirm.

A firearm offender registration requirement may, in the discretion of the trial judge, be imposed when an offender has committed a felony firearm offense. RCW 9.41.330(1). In exercising its discretion, the court shall consider "all relevant factors," including the offender's criminal history, any prior insanity-based verdicts, and the offender's propensity for violence that would endanger others. RCW 9.41.330(2).

Although the court's oral remarks did not mention prior insanity-based verdicts, the other factors were stated on the record. Critically, the written notification expressly states that the court considered the statutory factors in reaching its decision. Clerk's

16

No. 36381-3-III
*State v. Bergstrom*

Papers at 121. Given Mr. Bergstrom's previous firearm convictions and his unremitting criminal behavior, the trial court understandably required that he register as a felony firearm offender upon release from custody. There was no abuse of discretion.

Affirmed and remanded.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Korsmo, J.

WE CONCUR:

_____
Fearing, J.

_____
Pennell, C.J.

17